# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **FIDELITY AND DEPOSIT COMPANY OF MARYLAND,** ) | |
| **Plaintiff,** ) | |
| **v.** ) | **No. 06-2483-CM** |
| **D.M. WARD CONSTRUCTION CO., INC., et al.,** ) | |
| **Defendants.** ) | |

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Fidelity and Deposit Company of Maryland brings this action against defendants D.M. Ward Construction Co., Inc.; Ward Properties, L.L.C.; S&F Masonry, Inc.; D. Mark Ward; and Belinda Ward, seeking to enforce an indemnification agreement between the parties. Plaintiff executed surety bonds naming defendant D.M. Ward Construction Co., Inc. as principal for nine construction projects. When problems arose during the projects, construction suppliers and subcontractors made claims under the bonds. Plaintiff paid a number of the claims, but some remain pending. Moreover, suppliers and subcontractors have filed suit, seeking payment under the bonds. Plaintiff is also litigating with at least one obligee involving performance bond claims.

The case is before the court on Plaintiff Fidelity and Deposit Company of Maryland's Motion for Partial Summary Judgment (Doc. 61). Plaintiff asks the court to grant summary judgment on Count II of its complaint, which seeks specific performance of the portion of the indemnification agreement obligating defendants to post collateral security in the amount of $2,800,166.35. This is the amount of reserves set by plaintiff for pending claims. Defendants ask

the court to deny plaintiff's motion for two alternate reasons: (1) plaintiff is not entitled to equitable relief because of its own inequitable conduct; and/or (2) defendant needs a continuance to conduct more discovery pursuant to Fed. R. Civ. P. 56(f) before responding to plaintiff's motion.

**A.**   **Plaintiff's Alleged Inequitable Conduct**

The portion of the indemnification agreement relating to collateral security provides as follows:

> SECOND: The Contractor and Indemnitors shall exonerate, indemnify, and keep indemnified, the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement. **Payment by reason of the aforesaid causes shall be made to the Surety by the Contractor and Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor.  Such payment shall be equal to the amount of the reserve set by the Surety.**  In the event of any payment by the Surety the Contractor and Indemnitors further agree that in any accounting between the Surety and Contractor, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so dispursed, or that it was necessary or expedient to made such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be *prima facie* evidence of the fact and amount of the liability to the Surety.

(Doc. 62-2, at 1) (emphasis added).

The parties do not disagree about these facts[1]: (1) Liability has been asserted under the bonds

---

[1]  Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores,*

(continued...)

-2-

against plaintiff as surety; (2) Plaintiff established a reserve in the amount of $2,800,166.35; (3) Plaintiff made demands upon defendants to post collateral; and (4) Defendants have failed to post collateral security in any amount.  If the court considers these four facts in a vacuum, the plain language of the indemnity agreement requires defendants to post collateral security.  *See, e.g., Fid. & Deposit Co. of Md. v. Tri-Lam Co.*, No. SA-06-CA-207-CR, 2007 WL 1452632, at *1, *4 (W.D. Tex. May 15, 2007) (requiring indemnitors to post collateral security under same language); *Hanover Ins. Co. v. Clark*, No. 05-C-2162, 2006 WL 2375428, at *5 (N.D. Ill. Aug. 15, 2006) ("Illinois courts and other jurisdictions have routinely granted motions for summary judgment in favor of a surety for specific performance of the collateral security obligation of an indemnity agreement."); *U.S. Fid. & Guar. Co. v. Feibus*, 15 F. Supp. 2d 579, 588 (M.D. Pa. 1998) ("Under a collateral security provision like this one, once a surety receives a demand on its bond, the principal must provide the surety with funds.").

Defendants argue that the court should not consider these four facts in a vacuum.  According to defendants, plaintiff's inequitable conduct in handling the claims against it is relevant to whether defendants must post collateral.  Defendants filed counterclaims against plaintiff for breach of the indemnity agreement, civil conspiracy, and breach of fiduciary obligations.  Defendants also pleaded the affirmative defense of "unclean hands."  Now, in support of their position, defendants cite four cases for the general principle that a party may not receive equitable relief when it has engaged in inequitable conduct.  But the cases do not address the specific situation of a surety's rights under an indemnity agreement.  *Worthington v. Anderson*, 386 F.3d 1314 (10th Cir. 1004), involved a trademark infringement dispute.  *Home Bank & Trust Co. v. Cedar Bluff Cattle Feeders, Inc.*, 959

---

[1]  (...continued)
*Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

P.2d 934 (Kan. 1998), involved a suit for wrongful repossession of cattle where court applied the unclean hands theory to deny the defendant's claim of unjust enrichment.  *Id.* at 939–40.  *Great Plains v. Metametrix Clinical Laboratory*, No. 04-2125-GTV, 2004 WL 2491653 (D. Kan. Nov. 3, 2004) discussed the standards for pleading the unclean hands defense.  And *Administrative Committee of Wal-Mart Associates Health & Welfare Plan v. Willard*, 302 F. Supp. 2d 1267 (D. Kan. 2004) was an ERISA case.  None of the cases requires that the court deny plaintiff's motion.

The indemnity agreement also contains another provision that is relevant to this discussion—a clause that gives plaintiff unfettered discretion to handle claims unless and until defendants post collateral:

> THIRTEENTH: The Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon the Bonds, unless the Contractor and the Indemnitors shall request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, **and shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount**, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those of the Surety.

(Doc. 62-2, at 3) (emphasis added).

Pursuant to this clause, defendants bargained away the right to contest how plaintiff handled claims upon the bonds unless they were willing to post collateral satisfactory to plaintiff.  In cases with similar contractual clauses, courts have held that the indemnitor may not make a claim of bad faith where it failed to post the required collateral.  *See, e.g.*, *Liberty Mut. Ins. v. Adventura Eng'g & Constr. Corp.*, 534 F. Supp. 2d 1290, 1317 (S.D. Fla. 2008); *Fid. & Deposit Co. of Md. v. Fleischer*, 772 S.W.2d 809, 817–18 (Mo. Ct. App. 1989) (holding that the surety did not act in bad faith when it settled claims and contractor failed to post collateral security); *Feibus*, 15 F. Supp. 2d at 585 (holding that surety does not settle in bad faith when the other party ignored its repeated requests for

collateral); *Employers Ins. of Wasau v. Able Green, Inc.*, 749 F. Supp. 1100, 1102–03 (S.D. Fla. 1990) (same).  Because defendants did not post any collateral, plaintiff's conduct, even if improper, does not bar enforcement of the collateral security provision of the agreement.[2]

The court also notes that the second paragraph of the agreement—cited in full earlier in this opinion—provides that in an accounting, plaintiff shall be entitled to charge for disbursements made in good faith.  This portion of the paragraph reflects an intent by the parties to inject a good faith element at the time of actual indemnification.  The same good faith element does not appear in the portion relating to preliminary posting of collateral security.  The absence of a reference to good faith in relation to collateral security supports the court's determination that the plain language of the agreement requires defendants to post collateral in the amount of the reserve without regard to other factors.

Although defendants have not posted any collateral at all, much of the dispute between the parties appears to stem from defendants' position that plaintiff set the reserve unreasonably high.  In other words, defendants believe that the amount of collateral security that plaintiff seeks is excessive.  In a surreply that the court allowed defendants to file conditionally, defendants claim that "it is now evident that [plaintiff] would never be entitled to . . . 'collateral security' in the amount of $2,800,166.13, where all payment bond claims have been resolved except for $403,655.16 of disputed claims . . . and where Count 1 of Fidelity's Complaint seeks ***reimbursement*** of all payments made to bond claimants and expenses and fees incurred in defense of those claims,

---

[2]  The court does not consider or determine whether the counterclaims and affirmative defense will ultimately preclude plaintiff from recovering against defendants.  The issue presently before the court is not whether plaintiff is entitled to an award of damages.  Rather, the court only determines whether defendants must post collateral security in accordance with the agreement.  The instant ruling may impact the court's future rulings in this case, but the court does not address its impact now.

including specifically "'*such additional amounts as [plaintiff] may be required to pay*,' and where the basis of the Defendants' pending counterclaims is whether [plaintiff] made those payments in good faith." (Doc. 76, at 2) (emphasis in original).  The court understands defendants' argument to mean: because plaintiff has resolved all but $403,655.16 of the bond claims, the amount in reserve must necessarily be limited to that amount at this time.  Because Count II only seeks collateral security for pending claims and expenses (not resolved claims), defendants contend that it would be inappropriate to order defendants to post the full amount requested.

The court determines that the arguments raised by defendants in their surreply should be disregarded.  *See EEOC v. Int'l Paper Co.*, No. 91-2017-L, 1992 WL 370850, at *10 (D. Kan. Oct. 28, 1992).  The surreply was unnecessary, as plaintiff did not raise new issues in its reply brief. Moreover, defendants only added arguments that could have been made earlier.

Nevertheless, even if the court were to consider the arguments, they lack merit.  The agreement does not specify a moment in time at which the reserve amount would be frozen, but it also does not contemplate that the reserve will be a floating amount.  Plaintiff offered evidence showing that it deposited $2,800,166.35 in the reserve.  Defendants failed to controvert this amount or offer evidence to show that plaintiff's reserve amount no longer reflects plaintiff's obligations (including those already paid) and potential obligations to the subcontractors and suppliers.[3] Although only $403,655.16 remains in dispute, plaintiff, as surety, is entitled under the agreement to collateral to ensure that defendants will be able to meet their indemnification obligations under the agreement.  The court will not allow defendants to unjustly benefit by "holding out" posting the

---

[3]  Defendants attempted to controvert this amount through the affidavit of Mark Ward, who stated that plaintiff has been paid "substantial monies" on certain projects.  Mr. Ward does not explain how he has personal knowledge of this information, and admits that "[d]efendants do not currently know the exact amounts that were paid" (Doc. 66-2).  This evidence is insufficient to controvert plaintiff's evidence that the $2.8 million reserve has been established.

collateral until plaintiff resolves many of the claims, theoretically lowering the amount of collateral to which plaintiff is entitled with the resolution of each claim.

When a surety has demanded that a principal post collateral security and the principal refused, the legal remedy of damages is not adequate. *See Liberty Mut. Ins.*, 534 F. Supp. 2d at 1321; ("[A] surety's loss of its right to collateralization cannot be adequately remedied through monetary damages."); *Travelers Cas. & Sur. Co. v. Ockerlund*, No. 04-C-3963, 2004 WL 1794915, at *5 (N.D. Ill. Aug. 6, 2004).  The court therefore determines that plaintiff is entitled to specific performance as requested in Count II of its complaint.

**B.**     **Rule 56(f) Relief**

Defendants are not entitled to relief from this decision under their second argument.  Despite quoting the requirements for Rule 56(f) relief, defendants did not attach an affidavit or otherwise attempt to meet the requirements under Rule 56(f).  *Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000) (holding that a movant must explain by affidavit: (1) why facts precluding summary judgment are unavailable; (2) what probable facts he can find through further discovery; (3) what steps he has taken to obtain such facts; and (4) how additional time will allow him to controvert facts (quoting *Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992))).  The court will not withhold ruling under Rule 56(f).

**IT IS THEREFORE ORDERED** that Plaintiff Fidelity and Deposit Company of Maryland's Motion for Partial Summary Judgment (Doc. 61) is granted.

Dated this 14th day of July 2008, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**